# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGEL HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:12-cv-0328-WTL-DML |
| | ) | |
| HYATT REGENCY INDIANAPOLIS, | ) | |
| HYATT CORPORATION, and | ) | |
| C.G. SECURITY SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant Hyatt Regency Indianapolis[1] and Hyatt

Corporation's ("the Hyatt") motion for summary judgment (dkt. no. 83).[2]  This motion is fully

briefed, and the Court, being duly advised, **GRANTS**[3] the motion for the reasons set forth

below.[4]

---

[1] Defendants Hyatt Regency Indianapolis and Hyatt Corporation argue in their brief supporting their motion for summary judgment that the Hyatt Regency Indianapolis is an assumed business name and not a recognized business entity and should be dismissed from the case.  The Court agrees—Defendant Hyatt Regency Indianapolis is **DISMISSED** from this matter.  Therefore, when the Court refers to "the Hyatt," it is only referring to the Hyatt Corporation.

[2] Defendant C.G. Security Services, Inc. ("C.G. Security") also filed a motion for summary judgment in this cause (dkt. no. 86).  Since the filing of that motion, Houston has filed three motions for sanctions against C.G. Security (dkt. nos. 169, 197, and 206) for various discovery matters.  One remedy she requests is an entry of default judgment.  Accordingly, the Court will delay ruling on C.G. Security's summary judgment motion until the Magistrate Judge enters her recommendation on the motions for sanctions.  The Court does note, however, that it has reviewed C.G. Security's motion for summary judgment, and, absent the sanctions issue, it is likely that the analysis will be similar to the current Entry.

[3] As a result of this ruling, Defendant Hyatt's motion to bifurcate (dkt. no. 143) is **DENIED AS MOOT**.

[4] In light of the ongoing discovery disputes between Houston and C.G. Security, Houston filed a motion to strike both Defendants' motions for summary judgment (dkt. no. 203).  The basis for this motion is that "the evidence and testimony designated by the parties [] was in fact

# I.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.*  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

# II.  BACKGROUND

The facts taken in the light most favorable to the Plaintiff, Angel Houston, are as follow.

Houston visited Indianapolis, Indiana on December 31, 2010, to conduct personal business and to attend a New Year's Eve party at the Hyatt Regency Indianapolis ("Hyatt") hotel.  She purchased the most expensive package available, which included dinner at the Eagle's

---

not reliable or even truthful evidence and testimony."  The Hyatt has since responded to this motion (dkt. no. 209).  In ruling on the present motion for summary judgment, the Court has reviewed Houston's motion and the attached exhibits as well as the Hyatt's response.  As will become clear from this Entry, the Court does not believe striking the Hyatt's summary judgment motion to be necessary.  While the allegations contained in the motion may lead to sanctions against Defendant C.G. Security, ultimately the Court agrees with the Hyatt that they do not lend any more support to Houston's case against the Hyatt.

Nest restaurant, a guest room for the night, a ticket to the New Year's Eve party, and a VIP ticket upgrade. The VIP ticket upgrade gave her access to the Studio Lounge, a private area on the third floor of the hotel that provided light appetizers, a private bar and bartender, extra service staff, and a great view of the festivities down below. The New Year's Eve Party at the Hyatt was held on the first floor atrium as well as the second and third floors, but only VIP ticket holders had access to the third floor Studio Lounge.

Houston ate dinner at the Eagle's Nest, a restaurant on the 23rd floor of the hotel, around 9:00 p.m. After she finished dining, she went back to her hotel room to change into her party attire for the evening. She then went to the hotel's lobby to obtain the appropriate wristband indicating she was a VIP hotel guest. The Hyatt had numerous ticket packages available to accommodate their guests' needs and therefore issued different colored wristbands indicating whether someone was a hotel guest, a VIP ticket holder, over the age of 21, etc. Once she had her wristbands, Houston traveled up the escalators to the third floor to enjoy her evening.

The Hyatt has held the New Year's Eve party for several years, and since 2000 has contracted with C.G. Security Services, Inc. ("C.G. Security") to provide security services to monitor and control the crowd for the party. On the night in question, security officials were located on the first, second, and third floors of the hotel. Their duties included monitoring the three party floors, disallowing access to certain areas without the appropriate wristband, conducting surveillance to look for individuals who were intoxicated or causing disturbances, and checking identification at the various bars. In addition to contracting with C.G. Security, the Hyatt itself decided to close off access to the guest floors from the second and third floor elevators—in order to access a guest floor, guests had to use the lobby elevators. Once there, they had to show a room key and the appropriate wristband to access their rooms after they

attended the party. This was done to protect and maintain the privacy and security of other hotel guests.

Houston enjoyed her evening talking with other partygoers in the Studio Lounge. At approximately 1:15 a.m., she was ready to leave the party and return to her guest room. She attempted to use the elevators on the third floor, but was told she would have to take the escalators down to the first floor and take the lobby elevators up to her room on the 17th floor. Houston then took the escalators from the third floor to the second floor and from the second floor to the lobby floor. When she reached the lobby, a crowd was gathered at the bottom of the escalators, so Houston turned left to maneuver around the group of people. As she was proceeding to the lobby elevators, someone knocked her from behind on her left shoulder. Houston does not know who this person was, whether they were male or female, or whether the contact was accidental or intentional. The impact caused her to go airborne, and she landed on her right hand, hitting her head. Houston was able to pick herself up and continue to the lobby elevators; however, she fell unconscious in the elevator. A man and a woman who entered the elevator after Houston had fallen picked her up and carried her to her room to assist her.

Once in Houston's room, the man called for security while the woman helped Houston change her clothes and attend to her head wound. Two security officers, a male and a female who were already on the 17th floor regarding a different incident, came to Houston's room. Eventually, an ambulance was called, and EMTs transported Houston to the nearest hospital for treatment.

## III.  DISCUSSION

In her amended complaint, Houston brings three counts against Defendant Hyatt:  a negligence claim; a reckless/intentional acts claim; and a breach of contract claim.  The Court will address each below.

### A.  Houston's Negligence Claim

In order for a plaintiff to prevail on a negligence claim, she has to "establish a duty on the part of the defendant to conform his conduct to a standard of care arising out of his relationship with the plaintiff, a failure on the part of the defendant to conform his conduct to the requisite standard of care, and an injury to the plaintiff that is proximately caused by the breach." *Hopper v. Colonial Motel Properties, Inc.*, 762 N.E.2d 181, 188 (Ind. Ct. App. 2002) (citing *Franklin v. Benock*, 722 N.E.2d 874, 878 (Ind. Ct. App. 2000)).

#### 1.  Duty and Breach

The Indiana Supreme Court has established that a hotel guest is a business invitee of the hotel owner. *See Ellis v. Luxbury Hotels, Inc.*, 716 N.E.2d 359 (Ind. 1999).  As a business invitee, Houston was owed a duty of reasonable care to protect her from injuries from third parties. *See N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) ("Proprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct.").  The Hyatt admits that it owed Houston a duty on the night of her incident—"Defendants admit that they [Hyatt Regency Indianapolis and Hyatt Corporation] owed Plaintiff a duty[.]"). Def. Hyatt's Reply Brief at 2.

The Court now turns to whether the duty owed to Houston was breached.  Houston argues that the Hyatt breached the duties owed to her due to the failure of it and C.G. Security to

adequately police the premises, to control the crowd in the lobby, to monitor the amount of alcoholic beverages consumed, to hire more security guards for the evening, and to maintain elevator access on the second and third floors. For the purposes of this ruling, the Court will assume that the Hyatt did breach its duty as alleged by Houston and proceed to the proximate cause arguments as it finds that issue dispositive of this motion.[5]

### 2. Proximate Cause

The Hyatt hinges its argument with regard to Houston's negligence claim on the fact that it was not the proximate cause of Houston's injuries. "Proximate cause is an essential element of a negligence claim." *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 706 (Ind. Ct. App. 1999). A defendant's "act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission." *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 600 (Ind. 2006). General foreseeability that a negligent or criminal act might occur is not enough to prove proximate cause; rather, the specific incident has to be foreseeable in order for proximate cause to be found. *See Winchell v. Guy*, 857 N.E.2d 1024, 1029 (Ind. Ct. App. 2006) ("[F]oreseeability, for purposes of proximate cause, appears to turn on whether the specific incident was foreseeable, not whether a criminal act in general was foreseeable."). While causation is typically a question of fact for a jury, "where reasonable minds cannot disagree as to causation-in-fact, the issue may become a question of law for the court." *Peters v. Forster*, 804 N.E.2d 736 (Ind. 2004).

The Hyatt argues that Houston's injuries were unforeseeable because the incident was a "surprise," and that the person who knocked her from behind was a superseding cause of her fall,

---

[5] Defendant Hyatt maintains that it did not breach any duty owed to Houston.

breaking the chain of causation. These two grounds are really one in the same. *See Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind. 2003) ("The foreseeability requirement for proximate cause imposes the same limitations on liability as does the superseding cause doctrine.").

In the past, the Indiana Court of Appeals has ruled in favor of defendants when these "unexpected" and "surprise" incidents occur. For example, in *Lane v. St. Joseph's Regional Medical Center*, the plaintiff was injured in an emergency room when a teenage boy hit her several times on her arm. 817 N.E.2d 266, 268 (Ind. Ct. App. 2004). The court noted that the hospital did owe her a duty of protection from third party acts, which was recognized by the hospital in employing security officials in the emergency room. *Id*. at 273. However, because this attack came as an unexpected surprise to both the plaintiff and the hospital, the court found that the injury and the third party's actions were not foreseeable. *Id*. at 274.

Like the plaintiff in *Lane*, Houston herself admits that the unknown person who hit her from behind acted completely without warning. *See* Houston Dep. 154: 7-8 ("I wasn't expecting, I didn't know it was going to happen[.]"). There is simply no evidence in the record that this incident was anything but a surprise, and thus unforeseeable by the Hyatt. This leads the Court to conclude that no reasonable jury could find that the Hyatt's negligence was the proximate cause of Houston's injuries.

While the lack of foreseeability regarding this incident would compel a jury to conclude that the Hyatt was not the proximate cause of Houston's injuries, the real problem is in linking the Hyatt's assumed breach of duty with her injuries. The fact that the person who knocked Houston from behind is still currently unknown complicates the causation element, as the Haytt points out. Houston admits that she does not know "the particular motive of the person who

pushed her to the floor.  She does not even know who that person was—whether it was a fellow guest, a stranger to the hotel, an employee of the hotel, and/or an employee of C.G. Security Services, Inc." Pl.'s Brief at 15.  Houston also does not know "whether the person who pushed the Plaintiff intentionally did so, which would be criminal, or negligently did the act causing Plaintiff to be injured." *Id*. at 24.  There is simply no evidence demonstrating whether this person was intoxicated, was acting in a dangerous manner, simply tripped, or purposefully sought out Houston and struck her in the left shoulder, because there is no evidence at all as to who this person was.  Without this information, it would be impossible for a reasonable jury to find that the Haytt should have foreseen that this unknown person would have knocked Houston from behind.

In dealing with "unknown" causes of plaintiffs' injuries, Indiana courts have required that some factual evidence be presented that links a defendant's conduct to the alleged injuries.  For example, in *Midwest Commerce Banking Co. v. Livings*, the plaintiff sued a bank after she fell inside, injuring her left leg and shoulder. 608 N.E.2d 1010, 1011 (Ind. Ct. App. 1993).  The plaintiff was not sure of the cause of her fall—she thought she either tripped or was pushed by another bank customer. *Id*. at 1011-12.  The court found that the bank was entitled to summary judgment, stating, "causation may not be inferred merely from the existence of an allegedly negligent condition." *Id*. at 1013.  The court refused to speculate as to how the plaintiff's injuries occurred and how the bank's alleged negligence might have caused her injuries. *Id*. at 1012-13. It found that the plaintiff did not come forward with specific facts that demonstrated how the alleged negligence of the bank caused or contributed to her fall. *Id*. ("Livings [the plaintiff] confirmed the Bank's contentions by admitting, in her response to the Bank's motion for summary judgment, that Livings did not know what caused her fall[.]").

Similarly, in *Hayden v. Paragon Steakhouse*, the plaintiff alleged that he slipped and fell on either snow or ice outside a restaurant, but testified in his deposition that he did not see any snow or know if any ice was in the area. 731 N.E.2d 456, 457-58 (Ind. Ct. App. 2000). The court affirmed that grant of summary judgment in favor of the restaurant, stating that "[w]ithout any evidence on how or why James [the plaintiff] fell, the Haydens are relying on speculation and conjecture to explain the proximate cause of his injuries." *Id*. at 459-60. The court noted that the evidence given to the trial court revealed that the plaintiff "did not know what caused his fall." *Id*. at 458.

In her Response, Houston puts forth several arguments—in other words, speculates—as to what might have caused her injuries and how they are linked to the Hyatt's alleged negligence. First, she argues that the lack of policing by C.G. Security, the company the Hyatt hired to provide security services on New Year's Eve, caused her injury. *See* Pl.'s Brief at 27. However, there is no evidence that any failure to monitor, direct, and control the crowd contributed to Houston's injuries. To the contrary, Houston herself stated that she "saw the security guards earlier that evening as well as that evening right before the events . . . and they were instructing the crowds." Houston Dep. at 176: 14-16. She stated that "[t]hey were casing back and forth to make sure that there was an open area" and "[t]hey made an aisle . . . [t]hey were consistently controlling a passthrough." *Id*. at 177: 1-22. Further, Houston admitted that there were at least two to three feet around her at the time she was walking toward the lobby elevators to go up to her guest room. *See* Houston Dep. 258: 3-11. Therefore, the facts of record do not support an inference that a lack of crowd control or policing caused Houston's injuries. [6]

---

[6] Similarly, in her motion to strike, Houston argues that there was not "a sufficient amount of guards [] stationed at the event in question." Dkt. No. 203 at 3. She suggests that the testimony of Guynn at his latest deposition on December 18, 2013—that he paid cash for some

Similarly, she argues that the crowd of people should have been foreseeable because numerous events were closing around 1:15 am and everyone, including the VIP guests, were required to take the escalators down to the lobby elevators to access their guest rooms. Accepting this as true for the purposes of this ruling, no reasonable jury could find that the crowd was the cause of Houston's injury. In fact, Houston specifically maneuvered around this crowd by turning left once she got off the escalators. *See* Houston Dep. at 151: 10-20 ("There was a lot—I remember there being a lot of people, a lot of debris. And that's why I even turned that route, because when I was coming and walking down the elevator (sic) and people were in front of me, it was crowded to the right of me. And it was crowded in the bottleneck of that elevator and that exit to the parking. That's what prompted me to turn left and head to the backside of the elevators through the atrium."). Once out of the crowd of people, with at least two to three feet of space around her, it was an *unknown person* who knocked her left shoulder, causing her to fall and sustain injuries. Even if the Court accepts, as Houston urges, that there should have been more spacing and the crowd should have been better controlled, there is no evidence connecting the crowd with the unknown person who knocked her. No one else who made the same trek that Houston did was injured due to the crowd. The undisputed facts of record compel the conclusion

---

of the guards who were recently added to the list—is an attempt to cover up the fact that the Hyatt requested more security than what C.G. Security actually provided. Accepting this as true, the same problems remain with linking this with Houston's injuries. Even if there had there been the correct number of security guards present, Houston's "surprise" incident still could have occurred. Houston has produced no evidence that having more guards present would have prevented this incident because she simply does not know what happened.

Houston's complaints regarding the fact that C.G. Security has been less than forthright regarding the number and names of the guards who worked on the night in question, that C.G. Security represented certain documents as "actual" when, in fact, they were later classified as "planners," and the fact that some documents have been created during the course of litigation is something that is best addressed with the other alleged discovery violations. Ultimately, these alleged discovery violations and/or new evidence do not help Houston's case as she still has produced no evidence of what actually happened on the night in question.

that the cause of her injuries was the unknown person knocking her in the back of her left shoulder, not the spacing of the crowd.

Houston also argues that the Hyatt caused the incident because there were numerous people at the party consuming alcohol, and therefore, it was foreseeable that an incident like this could occur.[7] In fact, she directs the Court to a document that indicates that security escorted "a lot" of intoxicated people back to their rooms. *See* dkt. no. 203 at 21. She notes there was no limit to the number of drinking tickets guests could purchase, and that they were nonrefundable, resulting in more alcohol consumption and more intoxicated people in the lobby at 1:15 a.m. The Court recognizes that it is a possibility, but again, Houston has pointed to nothing that would indicate that the reason the unknown person knocked Houston on the back of her shoulder was because he or she was intoxicated. It is also possible that this person was completely sober and simply tripped over his or her shoelaces.

This same problem presents itself when Houston argues that the lobby area was not cleaned up properly after the midnight balloon drop. *See* Pl.'s Brief at 19 ("No records have been furnished to prove at what time, and how many of these individuals [the cleaning crew], were in the atrium cleaning up the debris, especially from the balloon drop."). Again, there is no evidence to suggest that the unknown person slipped on the debris on the floor resulting in the knock that caused Houston's injuries.

---

[7] In her Response, Houston refers to an incident on the 17th floor that required security's attention. A Code 2 (medical emergency) was called in "regarding an intoxicated hotel guest who had too much to drink; had fallen and were injured in a room next to Plaintiff's room." Pl.'s Brief at 5. It appears that C.G. Security's principal, Charles Guynn, has since disputed this incident, *see* dkt. no. 203 at 15-18, but for the purposes of this ruling, the Court will assume this incident did involve an intoxicated individual. The Court does not find that because one person was intoxicated in her room, this should have made the Hyatt, or C.G. Security, aware that the incident that led to Houston's injuries was likely because Houston has not produced any evidence suggesting that the person who knocked her from behind was intoxicated. Therefore, it is immaterial that there was an intoxicated guest who needed medical attention on the 17th floor.

Finally, Houston also takes issue with the security guards' training and criminal background checks, or lack thereof. *See* Pl.'s Brief at 16, 30-31; *see also* dkt. no. 203 (arguing that there were not "adequately trained" or "adequately screened" guards working on the night in question). She states that "most of the guards on the night in question were not regular employees of C.G." and that C.G. Security "did not, in any way, perform training for these individuals since they only worked for C.G. on the night in question." *Id*. at 31. While the Court agrees that training is needed to perform sufficient security, especially for a large event like the Hyatt's New Year's Eve party, there is simply no way to know whether if expertly trained, veteran security officers with no criminal records were working that evening, the incident would still have occurred, because Houston does not know what happened. Again, Houston's injuries resulted from a surprise attack—there is nothing to indicate that the individual who knocked Houston from behind was acting belligerently, stumbling around in the lobby, threatening violence against other guests, or gave any other indication that he or she was about to make contact with Houston. Further, there is nothing to indicate that the individual who knocked Houston from behind was a security official who had a criminal record. Houston has pointed to nothing in the record to suggest that having more, or better trained, security officials would have made this incident any less likely.

There are many possible scenarios regarding the unfortunate incident in which Houston was injured. Because Houston admittedly has no idea which of the scenarios occurred, she cannot prove by a preponderance of the evidence that any negligence on behalf of the Hyatt caused the incident to occur. Therefore, as in the *Lane*, *Midwest*, and *Hayden* cases, the Court finds that no reasonable jury could conclude, based on the facts of record, that any alleged negligence on the part of the Hyatt was the proximate cause of Houston's injuries. While

Houston may argue that a jury could *infer* many of these facts, "[a]n inference is not reasonable when it rests on no more than speculation or conjecture." *Midwest Commerce Banking Co.*, 608 N.E.2d at 1012. Unfortunately, Houston has done no more than speculate as to how the Hyatt's presumed negligence caused her injuries. As such, summary judgment is **GRANTED** for the Hyatt on Houston's negligence claims.[8]

## B. Houston's Breach of Contract Claim

The Hyatt also moves for summary judgment on Houston's breach of contract claim. "The basic requirements for a contract include offer, acceptance, consideration, and a meeting of the minds of the contracting parties." *Fiederlein v. Boutselis*, 952 N.E.2d 847, 856 (Ind. Ct. App. 2011) (citing *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006)). Whether or not a contract exists is a question of law for the Court. *Orr v. Westminster Village N., Inc.*, 689 N.E.2d 712, 721 (Ind. 1997). Houston argues that a contract was formed when she paid $365 for a VIP ticket package that granted her access to the second and third floor elevators in order to return to her guest room on the 17th floor after the conclusion of the party. The Court agrees that a contract was formed between Houston and Defendant Hyatt—it is not disputed that Houston purchased a dinner package for the Eagle's Nest as well as a VIP ticket upgrade that granted her access to the private Studio Lounge.[9] However, the Court agrees with Defendant Hyatt that it

---

[8] In her amended complaint, Houston also brings an intentional/reckless acts claim against Defendant Hyatt. Neither the Hyatt nor Houston address this claim in their briefs; however, because the Court finds that no reasonable jury could find that the Hyatt's negligence was the cause of Houston's injuries, the Court finds that the same would be true for Houston's intentional/reckless acts claim.

[9] In her response brief, Houston takes issue with the Hyatt's general manager's testimony, which Defendant Hyatt relies on in its motion for summary judgment, stating that his testimony "concerns what a guest who came in off the street could buy . . . [which] would not have included a hotel room." The Court notes that in his deposition, the general manager stated that in order to purchase the Eagle's Nest dinner package, you also needed to purchase a

only contracted with the Defendant to provide her the dinner tickets, a guest room, and VIP access to the Studio Lounge, which included "light appetizers . . . a bar and a bartender that was accessible only to those guests in the VIP lounge . . . service staff servicing that area, and . . . a good view of the entertainment in the atrium below." Comes Dep. at 72: 24-73: 5. These promises were fulfilled, as it is not disputed that Houston enjoyed dinner at the Eagle's Nest, spent much of her evening in the Studio Lounge, and did receive keys to her guest room.

Houston, however, also argues that by paying $365 for the VIP dinner package, she was promised special ingress and egress to and from the third floor Studio Lounge. Houston bases her claim on a flyer that she received when she checked in at the hotel. The flyer states:

> When going to your room during or after the party, you must show your room key and wristband in order to have access to the elevators. For the safety of our guests, only registered guests will be granted access to the guest floors. You can utilize the escalators form the main lobby to access all party areas which include the 1[st], 2[nd], & 3rd floors.

Hyatt Flyer.[10] Based on this language, Houston argues that she should have had access to the elevators on the second and third floor because the flyer "did not advise hotel guests that they would not be able to access the elevators to their guest rooms from floors 2 and 3." Pl.'s Brief at 4. The Court cannot agree with Houston that she was also entitled to special access to the second and third floor elevators—the flyer itself and the record is devoid of any proof that Defendant Hyatt made that promise. This makes sense, because the Hyatt made the decision prior to the

---

guestroom. *See* Comes Dep. 74: 6-21. It is clear from his deposition that the general manager understood that Houston was a "VIP hotel guest." Pl.'s Brief at 22.

[10] The Court notes that nowhere in the record does it indicate that this flyer was only given to guests who had purchased the VIP ticket upgrade. Further, it appears from the facts of record that this flyer was given to Houston *after* paid $365 for the VIP hotel guest package—it was given to her when she checked into the Hyatt. Thus, even if the Court agreed with Houston that the flyer contained a promise of special access to the second and third floor elevators, these were not promises made at the time the contract was originally formed and therefore were not part of the contract.

New Year's Eve party to specifically "program[] [the elevators] not to receive a request to come to the second floor or the third floor" in order to protect the safety and privacy of hotel guests. Comes Dep. at 71: 1-3.

Houston argues that the Hyatt impliedly promised VIP guests that they could access their hotel rooms from the second or third floor elevators. She relies on this language in the flyer to support her argument: "When going to your room during or after the party, you must show your room key and wristband in order to have access to the elevators. For the safety of our guests, only registered guests will be granted access to the guest floors." Hyatt Flyer. It is clear that these two sentences were given as a notice to hotel guests that in order to use an elevator to travel to their guest room, they would have to show the appropriate wristband and room key. The Court cannot think of any way, without stretching the language beyond its ordinary meaning, that these sentences could create a promise that the second and third floor elevators would be available for VIP guests to access their hotel rooms. *See Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind. Ct. App. 2000) ("Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions.").

Houston also argues that the use of the word "can" in the following sentence created an *option*, not a *necessity* to use the escalators to reach and leave the third floor VIP area: "You *can* utilize the escalators from the main lobby to access all party areas which include the 1st, 2nd, & 3rd floors." Hyatt Flyer (emphasis added). Again, the Court disagrees. While it might have been made clearer to Houston that she had to use the escalators to reach the various levels of the party if the Hyatt had used the word "must," this sentence by no means created a promise that the

Hyatt breached when it closed elevator access on the second and third floors and required all hotel guests to access their rooms from the first floor elevators.

The best Houston can argue is that she had the *impression* or she *thought* that as a VIP guest she could use the elevators on the second and third floors. This does not make a contract. Houston may be angry, frustrated, or disappointed that she had to walk down two escalators to the lobby floor in order to take the elevator to her guest room, but this does not constitute a breach of contract on the Hyatt's part. The Court finds that while a contract was formed between Houston and Defendant Hyatt, there was no term in that contract that entitled her to special access to the second and third floor elevators. Therefore, no breach of contract occurred when Defendant Hyatt shut off elevator access on the second and third floors. As such, summary judgment is **GRANTED** in favor of Defendant Hyatt on Houston's breach of contract claim.

## IV.  CONCLUSION

For the foregoing reasons, the Hyatt's motion for summary judgment (dkt. no. 83) is **GRANTED** in its entirety.

SO ORDERED: 02/03/2014

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication